**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

KATRINA C. WEST,

        Plaintiff,

vs.

ABENDROTH & RUSSELL LAW
FIRM,

        Defendant.

No. C14-03030-LTS

*ORDER ON MOTION
FOR SUMMARY JUDGMENT*

_____

### *TABLE OF CONTENTS*

*I.*    **INTRODUCTION** ......................................................................... *2*

*II.*   **RELEVANT FACTS** ..................................................................... *3*

*III.*  **SUMMARY JUDGMENT STANDARDS** ...................................... *6*

*IV.*  **ANALYSIS** ................................................................................... *8*

     *A. Does West's FDCPA Claim Fail as a Matter of Law?* ..................... *8*
      *1. The Alleged Violation* .................................................... *8*
      *2. The Statutory Defense* ...................................................*11*
     *B. Do West's State Law Claims Fail as a Matter of Law?* ...................*13*

*V.*    **CONCLUSION** ...........................................................................*14*

# I.  INTRODUCTION

On April 25, 2014, plaintiff Katrina C. West (West) filed a *pro se* lawsuit in the Iowa District Court for Webster County against Abendroth and Russell Law Firm (Law Firm) and a defendant identified as "Jill (last name omitted)." Doc. No. 3. In her state court petition, West asserted the following causes of actions based on a conversation between a Law Firm employee and an employee of a debt solutions company regarding West:

Count 1:    Violation of the Fair Debt Collection Practices Act (FDCPA)

Count 2:    Negligent hiring

Count 3:    Negligent training

Count 4:    Negligent retention

Count 5:    Negligent supervision

*Id.* The defendant identified as "Jill (last name omitted)" was not served, did not appear and is no longer a party to this action.[1]

On May 13, 2014, the Law Firm filed a notice (Doc. No. 1) of removal to this court, invoking federal question jurisdiction over Count 1 and (by implication) supplemental jurisdiction over the remaining, state law claims. This case was referred to me by order (Doc. No. 12) entered June 23, 2014, after the parties unanimously consented to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3).

On July 29, 2014, the Law Firm filed a motion (Doc. No. 14) for summary judgment in which it contends that West's claims fail as a matter of law. West filed a

---

[1] West's 120-day deadline for service on "Jill (last name omitted)" pursuant to Federal Rule of Civil Procedure 4(m) expired on September 10, 2014, 120 days after this action was removed to this court. *See, e.g., See Uzoukwu v. Prince George's Cnty. Coll. Bd. of Trustees,* No. DKC–12–3228, 2013 WL 3072373, at *2 (D. Md. June 17, 2013); *Eccles v. National Semiconductor Corp.*, 10 F. Supp. 2d 514, 519 (D. Md. 1998). For that reason, an order (Doc. No. 19) was entered on September 15, 2014, that dismissed "Jill (last name omitted)" from this action without prejudice. This leaves the Law Firm as the sole defendant.

resistance (Doc. No. 15) and the Law Firm filed a reply (Doc. No. 16). West then filed a response to the reply, without seeking leave of court to do so. Typically, the movant's reply is the final document either party may file with regard to a motion for summary judgment. *See, e.g.,* Local Rule 56. While West's response to the reply could be stricken on that basis, I have elected to consider it in light of West's status as a *pro se* litigant. Neither party has requested oral argument. I find that oral argument is not necessary. *See* Local Rule 7(c). The motion is fully submitted.

## II.    RELEVANT FACTS

The following facts are undisputed for purposes of the Law Firm's motion:

On January 22, 2014, the Law Firm commenced a small claims lawsuit against West on behalf of Capital One Bank (USA), N.A. (Capital One). The lawsuit was filed in the Iowa District Court for Webster County as Case No. SCSC058505 (the Small Claims Action). In the Small Claims Action, which is public record, Capital One alleged that West owed a debt and costs totaling approximately $1,641.00.

West had previously retained Ultimate Debt Solutions (UDS) to assist her with financial matters and resolve her outstanding debts, including the debt that became the subject of the Small Claims Action. Throughout her relationship with UDS, West informed UDS about her financial situation, outstanding debts and other personal information. She also executed a power of attorney authorizing UDS to contact the Law Firm in order to settle or otherwise resolve the debt at issue. This power of attorney in favor of UDS was not submitted to the Law Firm. However, two powers of attorney West executed in favor of other debt solution companies were on file with the Law Firm.

On February 10, 2014, UDS representative Cathy Zebarth (Cathy) called the Law Firm and left a voicemail message stating she was calling on behalf of West. Later that day, Jill Christiansen (Jill) returned the call on behalf of the Law Firm. All incoming and outgoing collections-related calls at the Law Firm are recorded. This particular call was recorded as follows:

Cathy:      Customer service, this is Cathy.

Jill:       Cathy, my name is Jill. I'm returning your call from Abendroth and Russell Law Firm regarding your client, Katrina West.

Cathy:      Yes. Okay, what did you need from me a social?

Jill:       I need to verify social and date of birth.

Cathy:      Social [omitted].

Jill:       M-hmm.

Cathy:      Date of birth [omitted].

Jill:       Okay, and I do need to advise you that I am not an attorney, I'm a debt collector attempting to collect a debt, any information obtained will be for that purpose, and this call is being recorded. Okay. Capital One with a balance of $1,641.01. How can I help you with that?

Cathy:      Okay – um – calling because she is interested in possibly settling this debt. Should I make a settlement offer to you, how do you . . .?

Jill:       I'll tell you what I can settle for. I can settle for $1394.

Cathy:      How many payments can we do that?

Jill:       It would have to be a lump sum payment.

Cathy:      Okay. I think I just wrote down wrong - what did you say $13. . .

Jill:       One thousand three ninety-four eighty-five.

Cathy:      Eighty-five, and it has to be a lump sum. Okay. I will check with the customer and get back to you. Did you have my power of attorney on file?

Jill:       Uh, we do - let me just double-check. We have two on file, I think. Clear Our Debt Defense, Clear Solutions, is that correct?

Cathy:          We're Ultimate Debt Solutions.

Jill:           Ultimate Debt? We have two on file already. I guess you can fax it over to me at 515-278-0091.

Cathy:          Okay, I'll get ours over there to you.

Jill:           And you calling from Marilyn Mauz's office?

Cathy:          Nope. No, we are Ultimate Debt Solutions - we're in Arizona - Scottsdale, Arizona. I believe she's with a company called DBS before she came over here.

Jill:           Okay. All right, thank you.

Cathy:          Okay, thank you.

West admits that at the time of this call, UDS had a valid power of attorney to act on her behalf with regard to the debt at issue.[2] However, UDS never provided that document to the Law Firm, even after the call. Nor has West produced the document in this lawsuit, as she states that she suffered damage to her computer such that she is not able to retrieve documents that had been stored on that computer.

The Law Firm maintains procedures designed to prevent the erroneous disclosure of debt information to unauthorized third parties. Those procedures include:

a.    the Law Firm ensures its employees are properly trained on the FDCPA and its requirements and obligations before it allows them to take or receive calls related to debt collection;

b.    the Law Firm requires that it have a copy of a power of attorney in its file before discussing debts with individuals other than the debtor;

c.    when the Law Firm receives information from a debtor that a person other than the debtor has a power of attorney to discuss the debt, the

---

[2] Among other things, West admitted the following request for admission: "You gave UDS a power of attorney to act on your behalf to resolve or settle your debt or alleged debt before it contacted [the Law Firm] on February 10, 2014." Doc. No. 14-3 at 9, no. 11.

file is electronically marked in a database to not contact the debtor directly, and to obtain a power of attorney;

d.     the Law Firm records all incoming and outgoing telephone calls and messages;

e.     the Law Firm requires that call logs be kept for all calls;

f.     the Law Firm requires that all copies of all papers, pleadings, faxes, emails and other paper and electronic documents created, sent or received be kept;

g.     the Law Firm regularly tests its call staff to ensure compliance with the FDCPA;

h.     the Law Firm randomly audits calls made to debtors by the staff to ensure compliance with the FDCPA;

i.     the Law Firm requires all parties who call related to debts to provide confidential verifying information, including social security number and birth date, before discussing the debt;

j.     the Law Firm's attorneys annually participate and attend continuing legal education courses related to the FDCPA and take that information to continually evaluate the process and procedures to determine whether changes or revisions need to be made.

This case presents the only instance in which the Law Firm has been sued for the alleged disclosure of debt information to a third party.

### III.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted, "after adequate time for discovery and upon motion, against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof,

then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV.    ANALYSIS

### A.    Does West's FDCPA Claim Fail as a Matter of Law?

Count 1 is based on West's allegation that Jill's conversation with Cathy on February 10, 2014, violated the FDCPA. In seeking entry of summary judgment, the Law Firm argues that as a matter of law (1) the conversation did not violate the FDCPA and, in any event, (2) a statutory defense applies. As I will discuss below, both arguments are correct.

### 1.    The Alleged Violation

West alleges that the Law Firm violated the FDCPA because it did not have the UDS power of attorney in its possession when the conversation between Jill and Cathy took place. The Law Firm argues that West's claim fails as a matter of law because a valid power of attorney existed at the time of the conversation. Doc. No. 14-2 at 6.

West's claim is based on 15 U.S.C. § 1692c(b), which states:

> COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, <u>with any person other than the consumer, his attorney</u>, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) [emphasis added].  The underlined portion makes it clear that a debt collector is permitted to communicate with the consumer and consumer's attorney regarding the debt at issue.  Moreover, subpart (d) of Section 1692c states:  "For the purpose of this section, the term 'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."  15 U.S.C. § 1692c(d).

The question here is whether UDS, having received a valid power of attorney from West, was a "consumer" within the meaning of Section 1692c(b).  If so, then the Law Firm's February 10, 2014, communication with UDS about the debt could not have violated FDCPA.  The Eighth Circuit Court of Appeals does not appear to have addressed the question of whether a power of attorney provided by a consumer to another party renders the recipient a "consumer" within the meaning of Section 1692c(b).  In general, a power of attorney is simply a writing by which one party, a principal, appoints another as attorney-in-fact and confers upon the latter the authority to perform certain specified acts on behalf of the principal.  *See, e.g., Figgins v. Cochrane*, 972 A.2d 736, 749 (Md. 2008).  Under Iowa law, a power of attorney creates a principal-agent relationship and appoints an agent to act on behalf of the principal, but only with regard to the powers specified in the document.  *Matter of Estate of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996).  An agent is a fiduciary to the principal and as such, must act for the benefit of the principal.  *Miller v. Berkoski*, 297 N.W.2d 334, 339 (Iowa 1980) (citing *Darling v. Nineteen-Eighty Corp.*, 176 N.W.2d 765, 768 (Iowa 1970)).

Here, by her own admission, West executed a valid power of attorney to UDS granting UDS authority to contact the Law Firm to discuss settlement terms, enter into a settlement agreement and resolve the debt. Doc. No. 14-3 at 9. West thus appointed UDS as her agent and attorney-in-fact. UDS effectively stepped into West's shoes, could act for West's benefit, bind West to a settlement and, therefore, was no longer a third party to the debt communications.

This situation is similar, in many ways, to that in *Bible v. Allied Interstate, Inc.*, No. 00-323-DWF/RLE, 2001 WL 1618494 (D. Minn. May 14, 2001). In that case, Caroline Bible admitted that her son, Paul Bible, handled all her business matters because she was deaf and it was difficult for her to speak on the phone. *Id.* at *1. When the defendant (Allied) attempted to contact Caroline, Paul answered the phone and correctly stated he represented Caroline. *Id.* Allied then spoke to Paul about Caroline's debt. *Id.* Caroline sued Allied, claiming its communication with Paul was an improper communication about the debt with a third party in violation of Section 1692c(b). *Id.* at *2. The court entered judgment in Allied's favor as a matter of law, holding that Paul was Caroline's *bona fide* representative and, therefore, any communication with Paul was the legal equivalent of a communication with Caroline. *Id.* at *3. The court explained:

> [T]he statute goes on to define "consumer," for purposes of the prohibition on third-party communications, as including the consumer's administrator. In this case, the undisputed evidence in the record indicates that Paul Bible represented himself as the administrator of Caroline Bible's affairs; he further represented that Caroline Bible was incapable of communicating by phone, and thus Caroline Bible was incapable of verifying or refuting Paul Bible's status as her administrator. Indeed, Plaintiffs do not refute Paul Bible's contention that he administers Caroline Bible's affairs. Thus, Allied's statements to Paul Bible were, under the terms of the statute, the equivalent of statements to Caroline Bible.

*Id.*

Just as Allied's communication with Paul Bible did not violate Section 1692c(b), even *absent* an executed power of attorney, the Law Firm's communication with UDS,

10

which had a valid power of attorney, was not a violation. The power of attorney West provided to UDS made the Law Firm's communications with UDS the legal equivalent of communications with West.

The fact that the Law Firm did not have physical possession of the power of attorney at the time of the communication is of no legal import. It is undisputed that West had already provided the power of attorney to UDS when the communication took place and that its scope included resolution of the debt with the Law Firm. UDS was West's lawfully-appointed representative, meaning the Law Firm was entitled to discuss the debt with UDS without first obtaining West's express permission. As a matter of law, the February 10, 2014, communication between the Law Firm and UDS did not violate Section 1692c(b). The Law Firm's motion for summary judgment will be granted with regard to Count I of West's complaint.

### 2. *The Statutory Defense*

The Law Firm argues in the alternative that even if it violated Section 1692c(b), it would be entitled to invoke the following statutory defense:

> A debt collector may not be held liable... if the debt collector shows by preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The Eighth Circuit Court of Appeals has acknowledged that while the Section 1692k(c) defense is a fact-intensive inquiry, it may be resolved by summary judgment when a reasonable jury could only conclude (1) the violation was unintentional, (2) the violation was a bona fide error and (3) that reasonable precautions to avoid bona fide errors were in place. *Wilhelm v. Credico*, 519 F.3d 416, 420-421 (8th Cir. 2008). The burden is on the debt collector to prove the elements of the defense. *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 966 (D. Minn. 2013) (citing *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2001).

The Eighth Circuit has not interpreted the precise scope of each element, so I will look to other courts for guidance. The Sixth Circuit has held that to satisfy the first element, "the debt collector must only show that the violation was unintentional, not that the communication itself was unintentional." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 42 (6th Cir. 1998). Meanwhile, the Seventh Circuit has defined a bona fide error as an error made in good faith or that is a genuine mistake. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005). The third element requires only that reasonable precautions are taken, not that every conceivable precaution to avoid the bona fide error is taken. *Id.* at 539.

Here, any violation was clearly unintentional. It is undisputed that UDS had a valid power of attorney on February 10, 2014, when the telephone conversation between Jill and Cathy occurred. It is also undisputed that Cathy, acting for UDS, initiated the contact by calling the Law Firm about the debt. Jill returned the call and required that Cathy verify West's social security number and birth date before proceeding with the conversation. Cathy represented to Jill that UDS had a power of attorney from West. At the time of this conversation, the Law Firm had powers of attorney from West on file that authorized the Law Firm to speak with other debt solutions companies. Jill mistakenly assumed that one of those powers of attorney related to UDS. However, upon realizing her mistake, she requested that Cathy provide a copy of the power of attorney in favor of UDS, which Cathy agreed to do. Based on these undisputed facts, no reasonable juror could conclude that Jill intended to violate the FDCPA.

These same facts likewise establish the second element, as the violation (if any) was genuine and made in good faith. Jill mistakenly assumed that the Law Firm already had a power of attorney on file in favor of UDS. When she attempted to confirm that Cathy was a representative of the debt solution company listed in the previously-filed powers of attorney, she discovered her error and asked Cathy to send a copy of the correct power of attorney. Again, there is no evidence suggesting that Jill acted in bad faith or that her mistake was not genuine.

The final element of the defense is also met. As detailed earlier, it is undisputed that the Law Firm employs numerous precautions and policies with regard to debt collection communications. These include recording conversations and auditing those recordings, requiring employee training, requiring a consumer's file to be marked when a power of attorney is on file and requiring verification in the form of personal information (such as the consumer's birth date and social security number). No evidence suggests that these precautions are unreasonable to avoid bona fide errors. Indeed, it is undisputed that the Law Firm has never previously been sued for the alleged disclosure of debt information to a third party.

The undisputed facts in the summary judgment record demonstrate, as a matter of law, that the Law Firm is entitled to the defense set forth in Section 1692k(c). This provides an alternative basis for granting the Law Firm's motion for summary judgment with regard to Count I.

**B.      *Do West's State Law Claims Fail as a Matter of Law?***

In Counts 2 through 5, West asserts state law tort claims for negligent hiring, negligent training, negligent retention, and negligent supervision. As the Law Firm correctly notes, all of these claims are based on the alleged FDCPA violation. It is well-established under Iowa law that "a necessary element" of such claims "is an underlying tort or wrongful act committed by the employee." *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004) (citing *Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 53 (Iowa 1999)). Here, for the reasons discussed above, there was no underlying tort or wrongful act. As such, West's various negligence theories necessarily fail as a matter of law.[3] The Law Firm's motion for summary judgment will be granted on Counts 2, 3, 4 and 5.

---

[3] I note that the record likewise does not support other essential elements of these negligence theories. To prevail, West would have to present evidence showing that the Law Firm acted negligently or recklessly in hiring, training supervising and/or retaining Jill and that this

## V.    CONCLUSION

For the reasons set forth herein:

1.    Defendant Abendroth and Russell Law Firm's motion (Doc. No. 14) for summary judgment is **granted** with regard to all counts.

2.    The trial of this case, scheduled to begin June 29, 2015, is hereby **canceled**.

3.    The Clerk of Court shall enter judgment in favor of defendant Abendroth and Russell Law Firm and against plaintiff Katrina C. West and shall close this case.


**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2014.


_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

---

negligence or recklessness caused injury to West. *Id.* at 171-72 (quoting Restatement (Second) of Agency § 213 (1957)). Even if an underlying tort or wrongful act occurred, West has not submitted evidence giving rise to any genuine issues of material fact as to those elements.